IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION


UNITED STATES OF AMERICA,                    No. 4:17-CR-00293-BSM-4

                          Plaintiff,

     V.                                      May 19, 2021; 11:30 a.m.

WESLEY S. GULLETT,
                                             Little Rock, Arkansas
                          Defendant.



                    **TRANSCRIPT OF SENTENCING**
              BEFORE THE HONORABLE BRIAN S. MILLER,
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Government:

     STEPHANIE MAZZANTI, Assistant United States Attorney
     LIZA BROWN, Assistant United States Attorney
          U. S. Attorney's Office
          P.O. Box 1229
          Little Rock, Arkansas 72203-1229


On Behalf of the Defendant:

     BRUCE D. EDDY, Assistant Federal Public Defender
          Federal Public Defenders Office
          Western District of Arkansas
          30 South 6th Street, Room 205
          Fort Smith, Arkansas 72901


     Proceedings reported by machine stenography; transcript
prepared utilizing computer-aided transcription.

1          (Proceedings commencing in open court at 11:30 a.m.)

2              THE COURT:  Let's go on and get started since we have

3    everybody here, and I'll do a mic check.  But first let's call

4    the case.

5          This is United States of America versus Wesley Gullett.

6    The case number is 17-CR-293.  Mr. Gullett is appearing by

7    video from Mason, Tennessee where he is in pre -- well, that's

8    not pretrial anymore.  He's in detention, awaiting sentencing.

9    His lawyer, Bruce Eddy, is in the courtroom here in Little

10   Rock, and the United States is being represented by Liza Brown

11   and Stephanie Mazzanti.

12         Are there any issues that we need to take up in camera?  I

13   guess we do.

14         Come to the bench real quick.

15         (Whereupon the proceedings were held under seal.)

16             THE COURT:  We'll go back on the record.

17         All right.  Mr. Gullett, I have a couple of questions for

18   you, just as preliminaries, before we get started.  Now, you

19   are an inmate in Tennessee, and you are not in the courtroom.

20         Do you have any objection to us proceeding with this

21   hearing, the sentencing hearing, without you being physically

22   present?

23             THE DEFENDANT:  No.

24             THE COURT:  And do you waive your right to be

25   physically present in the courtroom?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Okay.  Now, as history, the information I

3   have in front of me indicates that, on February the 3rd of

4   2021, you entered a plea of guilty to two counts of the second

5   superseding indictment.  You pled guilty to Count 1, which was

6   the RICO conspiracy violation, and you also -- or count.  And

7   you pled guilty to Count 10, which charged you with conspiracy

8   to distribute and possess with intent to distribute at least

9   500 grams of a mixture or substance containing a detectable

10   amount of methamphetamine.  Just for the record, this was an

11   11(c)(1)(C) plea, which means your lawyer had communicated with

12   the government and worked out a sentencing request.

13        Now, before we go any further, you've been represented by

14   Mr. Eddy.  Mr. Gullett, are you satisfied with the legal

15   representation he has given you?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Okay.  And when you -- when we took your

18   plea, I probably told you that probation was going to go out

19   and perform a presentence investigation and prepare a report.

20   I have a report that is dated March the 30th of 2021 and

21   revised on April the 20th of 2021.

22        Does the defendant -- first, Mr. Gullett, have you had a

23   chance to go over this report with Mr. Eddy?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Okay.  And, Mr. Eddy, do you have any

1    objections to the report, the final report?

2              MR. EDDY:  I do have some objections, Your Honor.

3              THE COURT:  Okay.  And what are those?

4              MR. EDDY:  Well, and let me -- I have some objections

5    to withdraw, and then I'll have some that I will state.  First,

6    I'd like to go over the ones I'm going to withdraw, and that

7    is, Your Honor, that I have objected that Wesley Gullett was

8    not in federal custody at the time of the alleged escape in

9    Jefferson County, Case No. CR19-451-5 in paragraph --

10             THE COURT:  Hold on.  Hold on just one second.  I

11   have no notations here that there were objections to the

12   presentence report, and I just don't have them and -- with my

13   packet of information, so I haven't even had a chance to look

14   to see what the objections are.  And so we're pretty much

15   working from scratch here, because I just don't have any.

16        Give me the paragraph and give me the objections that you

17   have withdrawn, and I'll take them up one by one.

18             MR. EDDY:  Your Honor, this pertains to paragraph 74.

19             THE COURT:  Okay.

20             MR. EDDY:  Excuse me, and 75 of the presentence

21   report and that is whether Mr. Gullett was in federal custody

22   at the time of the alleged escape.

23        And, Your Honor, I have objected that he was.  I now

24   withdraw that objection, Your Honor.

25             THE COURT:  Okay.

1          MR. EDDY:  It appears that he went into marshals
2   custody on February the 22nd of 2019 and entered federal
3   custody, for purposes of receiving credit to get the sentence
4   the Court imposes today, beginning July the 3rd of 2019.
5          And I've also objected, Your Honor, to paragraph 74 and
6   75; those are the pending escape cases, one in federal court
7   and one in state court.  And I just want to clarify that these
8   were denied based upon my advice to Mr. Gullett.  Those escape
9   charges are still pending, and he is not in a legal position to
10  do anything but deny that conduct at this time since those are
11  still pending.  And I just wanted to make --
12          THE COURT:  What paragraph was that?
13          MR. EDDY:  That would be paragraph 74 and 75.  Again,
14  Your Honor, those are the pending escape charges.
15          THE COURT:  Hold on.
16          MR. EDDY:  There is one out of Jefferson County and
17  one in federal court here in Little Rock.  And I was just
18  wanting to make that clear that those are being denied based on
19  my advice to Mr. Gullett because those charges are still
20  pending at this time.
21          THE COURT:  I'll overrule that.
22          MR. EDDY:  And, also, I am withdrawing my
23  objection -- this has to do with the computation of the offense
24  level.  And I had objected saying that, if there was going to
25  be an offense level cap that's provided under the application

1   notes to the Chapter 5, Part A, that would be done before the
2   acceptance of responsibility was taken into account.
3        And I withdraw that objection because, based upon my
4   research, the acceptance of responsibility is taken into
5   account, and then you take that total offense level after an
6   adjustment for acceptance of responsibility and compare that to
7   the offense level cap that is found in the application notes to
8   the Chapter 5, Part A and see whether that would identify or
9   not.
10            THE COURT:  Okay.
11            MR. EDDY:  So I withdraw that objection as well, Your
12   Honor.
13            THE COURT:  And so I do have a note saying that you
14   have objections to 29, 109, and 110.  Are those the objections
15   that are still on the table?
16            MR. EDDY:  Your Honor, I have objections to the
17   computation of the offense level.  I believe -- after
18   withdrawing my objection as to when you apply the acceptance of
19   responsibility, I believe that my total offense level
20   computation agrees with that of probation, though we get there
21   by a different means.
22            THE COURT:  A different way?
23            MR. EDDY:  But I believe that we are probably at the
24   same place after that objection is withdrawn, Your Honor.
25            THE COURT:  Okay.  Well, and same question:  Do you

1   still have -- are there still objections to the paragraphs 29,

2   109, and 110?

3          MR. EDDY:  Let's see.  29.  Your Honor, as to the

4   restitution, it's my understanding that there is no

5   restitution.  The government has none to present today.  We

6   would still contend that, even though restitution may very well

7   apply in this case, there would be nothing that Mr. Gullett

8   would have to pay, as far as restitution goes.  But it may be

9   that is a moot point because I don't think the government is

10  asking for any, but I will rely upon the government to confirm

11  that fact.

12          MS. MAZZANTI:  That's correct, Your Honor.  We do

13  contend there is a victim in this case; obviously, there was an

14  attempted murder.  So there is a victim to the case; however,

15  the victim's family has not -- or legal representative has not

16  made any sort of restitution request of the government, and so

17  we don't have anything to litigate on that point.  We're not

18  making a request for restitution in a monetary sense.

19          THE COURT:  Hold on just one second.  Hold on just

20  one second.  I am trying to get my footing, because the notes I

21  have are that the defendant objects to paragraphs 29, 109, and

22  110, neither of which deals with restitution.

23      I think 109 and 110 are primarily just dealing with

24  whether I can depart or vary, which I think those are general

25  objections.  Twenty-nine deals with impact on victim, and I

1    guess that goes towards restitution, and that's the issue with

2    regard to restitution.

3        Defendant argues -- Mr. Eddy is arguing that the

4    government -- he has this objection to determining there is

5    restitution owed.  The government doesn't necessarily say that

6    it has -- it's only response is "We're not asking for

7    restitution."  And so I guess the objection -- I guess it could

8    be sustained.

9        But is there really any reason to sustain an objection to

10   something which there is no evidence to show anyway?

11       And so what I will do is I'll sustain the objection, just

12   so we have a record of it, and so the government will not be

13   able to come back later and ask for restitution in the future.

14   But I think that ruling really has -- doesn't make much of a

15   difference one way or the other.

16       Are there any other objections that the defendant has?

17           MR. EDDY:  There are not, Your Honor.

18           THE COURT:  Okay.  And does the government have any

19   objections to the presentence report?

20           MS. MAZZANTI:  No, Your Honor.

21           THE COURT:  Okay.  So subject to sustaining the

22   objection to paragraph 29, I'll overrule the defendant on the

23   other objections made to the presentence report except for

24   those you've already withdrawn.  And I'll adopt the presentence

25   report as written except as revised, with the revised

1   paragraph 29.

2          Now, Mr. Gullett, we talked about this a little bit, when

3   we took your plea, that in the federal system we have our law

4   that tells me what the minimum and maximum sentences are that I

5   can give you.  I have to give you a sentence within the range

6   provided by the law.  In addition to the law, we have

7   sentencing guidelines that help me determine what an

8   appropriate sentence is.  I am not required to give you a

9   sentence within the range provided by the guidelines as long as

10  I give you a sentence within the range provided by the law.

11         Your lawyer, Mr. Eddy, has already communicated with the

12  government, and they've worked out an 11(c)(1)(C) plea for you

13  where they have a recommendation for a sentence, but I am still

14  going to go through all of the guidelines and through the law,

15  because I'm required to by the Eighth Circuit, to calculate

16  those.

17         The statutory penalty for Count 1, which is a RICO

18  conspiracy count, is a penalty of life or up to life of

19  imprisonment, a fine of not more than $250,000, not more than

20  five years of supervised release, and a $100 special

21  assessment.

22         Do you understand that, Mr. Gullett?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  The penalties based on the law for

25  Count 10, which is the narcotics conspiracy, is not less than

1   10 years but up to life of imprisonment, a fine of up to

2   $10 million, and supervised release of between five years and

3   life, and there is a $100 special assessment for that count as

4   well.

5           Do you understand that?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  And with regard to the guidelines, the

8   computation of the guidelines is a little confusing; however,

9   for Count 1, which is the RICO conspiracy count, you have a

10  base offense level of 33, you have a four-level increase

11  because the offense involved the offer or receipt of something

12  of pecuniary value for the undertaking of a murder, you receive

13  a four-level enhancement because you were the organizer or

14  leader, and so that brings us to a 41.  You have a two-point

15  increase for obstruction of justice, which brings us all the

16  way to a total offense level of 43.

17          For Count 10, the narcotics conspiracy, that has a base

18  offense level of 34.  You receive a two-level increase because

19  a firearm was possessed, which brings us to a 36.  You receive

20  a four-level increase because you were a leader or organizer,

21  which brings us to a 40.  So the adjusted offense level for

22  Count 10 is 40.

23          Now, there is a multiple count adjustment, which is a

24  little confusing, for Group 1, which was Count 1.  That had an

25  adjusted offense level of 43.  And so you receive one unit, or

1    one point, for that.  For Count 10, it had three -- it was

2    three levels below Count 1, so you get another point for that.

3    And so that means you have two additional points.  And you add

4    those points to the higher of the two groups, which was 43,

5    which was Count 1, and so you add two points to the 43 points

6    adjusted level in Count 1, and that brings us to a total

7    offense level of 45.

8         You receive a two-point reduction for acceptance of

9    responsibility, which brings us back down to a 43.

10        And here's the question:  I didn't have a note initially

11   whether there would be a point given -- the third point given,

12   and I am not sure that we need to do that, but I will still ask

13   the government:  Does the government move for a third point?

14            MS. MAZZANTI:  We do, Your Honor.  Per the terms of

15   the plea agreement, it provides that he is eligible for that,

16   if he doesn't take actions inconsistent with this plea until

17   this point, and we do move for it.  I think it does ultimately

18   put his guideline range -- our agreement within the guideline

19   range to 360 to life.

20            THE COURT:  Okay.  That's right.  That's right.

21        And so, Mr. Gullett, you have a total adjusted offense

22   level of 42.  Now, you have 23 criminal history points, which

23   results in a criminal history category of VI.  Now, someone

24   with a total offense level of 42, with a criminal history

25   category of VI, has a sentencing range of 360 months to life of

1  imprisonment, a fine range of $50,000 to $10 million.  You have

2  a supervised release range of -- I have here two years, two to

3  five years.  A guideline range for supervised release -- well,

4  hold on just one second.  That's for Count 1.

5       What is the count range for supervised release?  Is it two

6  to five years?

7            THE PROBATION OFFICER:  Yes, for Count 1 it is.

8            THE COURT:  And for Count 3 is five years to life?

9            MS. MAZZANTI:  Count 10, Your Honor.

10            THE PROBATION OFFICER:  Count 10.

11            THE COURT:  Count 10 is five years to life.  Okay.

12       Probation is not authorized under the guidelines, and

13  there is a special assessment of $200, which is mandatory, and

14  that is essentially $100 for each count, Mr. Gullett.

15       Do you understand that?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Okay.  And I know that's confusing,

18  because it confuses me a little bit.  But you understand that

19  that is your sentencing guidelines range?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Okay.  Now, before we get to departure or

22  variance argument, this is an 11(c)(1)(C) plea.  I will accept

23  that -- the recommendation of the lawyers.

24       And so if you want to now make any departure or variance

25  argument, Mr. Eddy, you can, but just understand you've come to

1  an agreement with the government, and I'm agreeing to give you

2  the benefit of your deal if that's what you still want.

3         MR. EDDY:  That is correct, Your Honor.

4         THE COURT:  Okay.  And does the government have any

5  departure or variance argument?

6         MS. MAZZANTI:  We don't, Your Honor.  We did want to

7  just make a statement, in support of the sentence in the event

8  it gets -- there is later litigation.

9         THE COURT:  I understand, and you can do so.

10        MS. MAZZANTI:  Your Honor, the United States submits

11  that the proposed sentence of 35 years of imprisonment is a

12  fair sentence.  It is also sufficient but not greater than

13  necessary to accomplish the goals of sentencing under the

14  factors set forth in 18 USC Section 3553(a).

15     In considering the appropriate sentence in this case, the

16  government took into account the defendant's age and at what

17  age the government believed he would no longer pose a danger to

18  the community.  We also considered his criminal history that he

19  has 23 criminal history points, far in excess of the points

20  necessary for category VI, the guideline range, and his career

21  offender status.

22     We also took into account sentences imposed as to other

23  defendants in this case and in similar prosecutions in the

24  country.

25     Additionally, the government considered the significant

1    leadership role that the defendant had in the NAE, as the

2    outside president of the organization and his responsibility

3    for the conduct of the organization.

4        NAE engaged in large scale methamphetamine trafficking

5    over an extended period of time, which significantly harmed the

6    communities in which they conducted this illegal activity.  And

7    this defendant was at the center of that harm.

8        Even after Gullett was incarcerated, he continued to

9    direct drug trafficking activities of those on the outside and

10   attempted to have contraband smuggled into jail for him.  While

11   he also escaped while in federal custody for this case, we are

12   not asking the Court to take that conduct into account because

13   he faces separate federal charges and a potential sentence for

14   that conduct in a separate case pending before Judge Moody, as

15   reflected in the PSR.

16       We also considered the violence engaged in by the

17   defendant's organization.  The defendant attempted to murder an

18   individual, who was acting as an informant for law enforcement,

19   in retaliation for that individual providing information about

20   co-defendant Marcus Millsap, for money.

21       As reflected in the PSR, on behalf of Millsap, Gullett

22   solicited others to murder the informant all of which furthered

23   the drug trafficking partnership between Millsap and Gullett.

24   The attempted murder demonstrated NAE's role that it did not

25   tolerate cooperating with law enforcement if it implicates a

1    member or someone associated with the organization.

2         In the same way, NAE retaliated against HD, for providing

3    information to law enforcement, by kidnapping him, having

4    people take turns beating him, branding his face with a hot

5    knife, and have a dog bite him.

6         CL was kidnapped twice, beaten, stabbed.  For violating

7    NAE's code, the organization physically assaulted and battered,

8    x-ed people out, which is also referred to as taking their

9    patch, or killed them.  And we have seen such violence in x-ing

10   out in this case for those who chose to cooperate with law

11   enforcement.

12        The defendant was a leader in an incredibly violent

13   organization that caused significant harm to our state and the

14   Arkansas prison system and the victims of this organization's

15   conduct.  And the sentence of 35 years accounts for that

16   conduct and is appropriate in this case.

17             THE COURT:  All right.  Mr. Gullett, before I

18   sentence you, do you want to make a statement?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Okay.

21             MR. EDDY:  Your Honor, if I may, I have some requests

22   for the court.  It's not a variance --

23             THE COURT:  Okay.

24             MR. EDDY:  -- or departure.

25        But, Your Honor, I would request that the Court consider

1    making a recommendation for placing Mr. Gullett in an ex-gang

2    unit of the Bureau of Prisons.  He has left the NAE, and he

3    would like to go to an ex-gang unit.

4        Also request recommendation for all available educational

5    and vocational training.  In addition, I ask for recommendation

6    for the residential drug abuse program.  Mr. Gullett

7    understands he won't get a reduction to his sentence upon

8    completion of that program because there was a firearm

9    involved, but he wants to be able to participate in that

10   program, learn how to control his addiction instead of his

11   addiction controlling him because, as you can see in the

12   presentence report, drugs were a motivating factor in the

13   offenses that Mr. Gullett has committed.

14       And, finally, Your Honor, in imposing a sentence, I would

15   request that the Court to have this sentence the Court imposes

16   run concurrent under 5G1.3 to the state and federal escapes.

17   They're contained in paragraph 74 and in paragraph 75 of the

18   presentence report.  One is Jefferson County Case

19   No. CR19-451-5 and Little Rock federal -- Little Rock District

20   Court Case No. 9 -- I'm sorry, 4:19CR00474, and that's in

21   paragraph 75 of the presentence report.

22       I am not asking for any type of a sentence reduction, just

23   that this sentence would run concurrent because those alleged

24   escapes are certainly relevant conduct to the offense that he

25   is being sentenced on here today, pursuant to guidelines

1    section 1B1.1 subsection (a).

2          The alleged conduct in paragraph 74 and 75 allege it

3    occurred on or about July the 28th, 2019.  And the offense

4    conduct, to which Mr. Gullett pled guilty and is being

5    sentenced on today, that concluded on or about September the

6    3rd of 2019.

7              THE COURT:  All right.  I will -- usually I will

8    give -- I will tell defendants that I don't have the right to

9    run cases concurrent or what have you, but I have no objection

10   to them.

11         I am going to specifically overrule or deny your request

12   for the ex-gang unit request, the RDAP request, the running of

13   concurrent.  I think Mr. Gullett has gotten -- you've done a

14   great job for him, Mr. Eddy.  And you were able to keep him

15   from getting life in prison.  And I think he's gotten the full

16   benefit of your hard work.  But he's got to go serve his time.

17         And I'm -- now, whether the Bureau of Prisons decides to

18   work with him on all of those things, that's fine.  I am just

19   not going to recommend it or order it.  So that's overruled or

20   denied or whatever notation you need.

21         And here's what I'm going to do.  Mr. Gullett, I'm going

22   to order you to the Bureau of Prisons for a term of 420 months.

23   I'm going to recommend that you participate in substance abuse

24   treatment and educational and vocational programs while you're

25   there.

I'm going to sentence you to a term of five years of supervised release -- of supervised release.  I'm going to order you, as part of your supervised release, to participate in a substance abuse treatment program under the guidance and supervision of the probation office.  This will include drug and alcohol testing, outpatient counseling, and residential treatment.  You'll have to abstain from the use of alcohol during the course of treatment.  And you'll have to pay a $10 copay for your -- for each session up to $40 per month based on your ability to pay.  And, Mr. Gullett, if you are not able to pay the copay, it will be waived.  The main thing is is to get your treatment.

If there is reasonable suspicion to believe that you are committing or violating the terms of your supervised release, then you'll have to submit your person, property, house, residence, and vehicles, papers, computers, whatever, other electronic communications or data storage to a search by the probation office while you're on supervised release.  Failure to submit to a search may be grounds for revocation of your supervised release.

I'm also going to order you to cooperate in the collection of DNA.  I am not going to order you to pay a fine, but I am going to order you to pay a $200 special penalty assessment, and that is $100 for each case.

Now, with regard to where you serve your time, is there a

1  specific facility where Mr. Gullett would like to serve his
2  time?
3           MR. EDDY:  No, Your Honor, not that I'm aware of.  He
4  just wanted to be in an ex-gang unit.  But there was never --
5           THE DEFENDANT:  Yes, sir.  Yes, sir, there is.
6           MR. EDDY:  Okay.  There is, Your Honor.
7           THE COURT:  Where would you like to serve your time,
8  Mr. Gullett?
9           THE DEFENDANT:  Well, Your Honor, I really backed
10 away from all the bad -- I mean, all the, like, brotherhood
11 stuff that I was doing.  Me being anywhere around here is going
12 to get me right in the mess that's got me here.  I'm pushed to
13 serve my whole life doing things that I was really misled into
14 doing.
15      I don't understand why I can't go to an ex-gang unit, Your
16 Honor, when I'm choosing to drop what I -- what's gotten me
17 here.  I mean, that just really don't make no sense to me.
18           THE COURT:  Where -- what facility would you want to
19 serve your time?  Do you know of one?
20           THE DEFENDANT:  I don't know.  I mean, I've never
21 been here.  I mean --
22           THE COURT:  Here's what I will do.  Here's what I
23 will do.  You get me, Mr. Eddy, --
24           MR. EDDY:  Yes, sir.
25           THE COURT:  You supply me with the name of a

1    facility, and I'll make the recommendation.  But I don't want

2    to do a generalized request.

3              MR. EDDY:  Yes, Your Honor.

4              THE COURT:  If you give me the name of a facility

5    where he'll serve out his time, I'll make that recommendation.

6              MR. EDDY:  Thank you, Your Honor.

7              THE COURT:  All right.  Anything on behalf of the

8    government?

9              MS. MAZZANTI:  No, Your Honor.

10             THE COURT:  Anything on behalf -- anything else for

11   the defendant?

12             MR. EDDY:  No, Your Honor.

13             THE COURT:  All right.  Let's adjourn.

14             MS. MAZZANTI:  Except for the appeal rights, Your

15   Honor.

16             THE COURT:  Ah.

17             MS. MAZZANTI:  I'm sorry.

18             THE COURT:  Mr. Gullett, you have 14 days in which to

19   appeal your sentence.  If you cannot afford the cost of the

20   appeal, you can ask for leave to appeal in forma pauperis.  And

21   if it's determined you cannot afford it, you'll be allowed to

22   file your appeal and pay your filing fee in installments, or

23   your filing fee will be waived, where you don't have to pay it

24   at all.

25        If you cannot afford a lawyer on appeal, one will be

1  appointed to represent you.  But the main thing is that, if you

2  choose to appeal, you have to file your appeal within 14 days

3  on the day I enter the judgment.

4      Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  Now --

7          MR. EDDY:  There is one more thing, Your Honor, and

8  that is the indictment -- or the counts that Mr. Gullett didn't

9  plead to need to be dismissed, because that was not done at the

10  change of plea, so that needs to be done.

11          MS. MAZZANTI:  Yes, Your Honor.  And we would so move

12  to dismiss the remaining counts and indictments against this

13  defendant.

14      Also, just because we have an issue kind of pending in the

15  Eighth Circuit that is similar to this, with regard to the

16  appeal rights, the government just makes the record that he

17  does have appeal waivers in his plea agreement that the

18  government would enforce, Your Honor.

19          THE COURT:  Okay.  And so that notation has been

20  made.

21      All right.  We have a hearing at 1:00 o'clock.  So we'll

22  recess until 1:00 o'clock.

23      (Adjourned at 11:59 a.m.)

24                              -oOo-

25

REPORTER'S CERTIFICATE

     I certify that the foregoing is a correct transcript of
proceedings in the above-entitled matter.


/s/ Suzanne M. McKennon, CSR, CRR, RMR
_____          Date:  06/17/2021
United States Court Reporter